**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **N.G., *an individual*,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-1092** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **G6 HOSPITALITY, LLC, *et al.*,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before the Court on the Motion to Dismiss of Defendants G6 Hospitality, LLC and G6 Hospitality Property, LLC. (ECF No. 17). For the following reasons, that motion is **DENIED**.

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Plaintiff N.G., is a resident of Pomona, California who initiated this suit in this district court on September 23, 2025. (Compl., ECF No. 1 ¶ 9). Proceeding anonymously, she brings this lawsuit against Defendants G6 Hospitality, LLC and G6 Hospitality Property, LLC. She alleges that she was the victim of sex trafficking at a Motel 6 in Inglewood, California from 2015 until 2017 while she was a minor. (*Id.* ¶¶ 3, 11). Now, she seeks to hold Defendants civilly liable for her alleged trafficking at their hotel, alleging that they knew or should have known she was being trafficked in violation of the TVPRA. (*See id.* ¶¶ 33, 66). The Defendants are two Delaware limited liability companies that each operate their principal place of business in Carrollton, Texas. (*Id.* ¶¶ 11, 13).

Plaintiff brings two causes of action against them: (1) violation of the TVPRA; and (2) violation of CAVRA. (*Id.* ¶¶ 32, 101–19).

On November 26, 2025, Defendants moved to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Plaintiff opposed, (ECF No. 23), and Defendants replied, (ECF No. 24). On February 12, 2026, Plaintiff moved for leave to file supplemental authority. (ECF No. 26). That motion to supplement is unopposed.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(3) challenges the venue of the district court. Venue is proper in: (1) any district in which the defendant resides, if all defendants are residents of the state; (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property is situated"; or (3) if there is no other district where the action may be brought so long as the court has personal jurisdiction over the defendant. 28 U.S.C. § 1391(b). Where venue is challenged, its proponent "bears the burden of proving venue by a preponderance of the evidence." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 (6th Cir. 2025). And when venue is found to be improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Even where venue is proper under § 1391(b), a court may exercise its discretion to grant a motion to transfer venue under 28 U.S.C. § 1404(a) if the transfer would further the convenience of the parties and the witnesses and be in the interest of justice. *See A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *1 (S.D. Ohio June 16, 2020) (Marbley, J).

## III. LAW & ANALYSIS

Congress can confer nationwide personal jurisdiction when it includes a nationwide service of process provision in a statute. *See Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 438 (6th Cir. 2022). When it creates such a provision, it "permit[s] claimants to sue a defendant in any of the federal district courts in the country." *Id.* This is what Congress did in the Child Abuse Victim's Rights Act. CAVRA provides that "process may be served in any district in which the defendant . . . is an inhabitant; or may be found." 18 U.S.C. § 2255(c)(2). When a defendant is served in a CAVRA case, personal jurisdiction is established. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *9 (S.D. Ohio Apr. 25, 2023) (Marbley, J.) (citing Fed. R. Civ. P. 4(k)(1)(C)).

The personal jurisdiction analysis under such statutory provisions "no longer assesses whether the defendant has minimum contacts with the forum state but instead determines whether a defendant has minimum contacts to the United States." *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *9. The Sixth Circuit's discussion of such statutory provisions in *Med. Mut. of Ohio v. DeSoto* is instructive:

> When . . . a federal court sitting pursuant to federal question jurisdiction exercises personal jurisdiction over a U.S. citizen or resident based on a congressionally authorized nationwide service of process provision, that individual['s] [due process] liberty interest is not threatened. In such cases, the individual is not being subject to extra-territorial jurisdiction, because the individual is within the territory of the sovereign—the United States—exercising jurisdiction. In other words, when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States.

245 F. 3d 561, 567 (6th Cir. 2001).

Yet personal jurisdiction and proper venue are not one and the same. *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *10. CAVRA also includes a venue provision, which states "[a]ny action brought . . . may be brought in the district court of the United States that meets applicable

requirements relating to venue under [28 U.S.C. § 1391].” 18 U.S.C. § 2255(c)(1). The Court has previously determined that it has jurisdiction over corporate defendants in CAVRA cases, as “they are all considered residents of the Southern District of Ohio for venue purposes” under 28 U.S.C. § 1391(b)(1). *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *10. That general venue provision of the statute provides that “[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.” 28 U.S.C. § 1391(b)(1). And its neighboring provision on residency explains that, for purposes of venue, “an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court’s personal jurisdiction with respect to the civil action in question.” 28 U.S.C. § 1391(c)(2).

**A. Venue Dispute**

The parties dispute one issue: whether venue is proper in this district, or whether venue must be transferred to the Northern District of Ohio. Although Defendants accept, at least in their Motion, that CAVRA’s nationwide service-of-process provision creates nationwide personal jurisdiction, they contend that 28 U.S.C. § 1391(d) “requires a two-step inquiry to determine venue” for CAVRA suits in states with multiple judicial districts. (ECF No. 17 at 4). This provision of the venue statute governs the residency of corporations in states with multiple districts. It provides:

> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d).

Defendants contend that under the first step of the inquiry, they are not subject to personal jurisdiction in either the Northern or Southern District of Ohio. Then, on the second step "back-up," they posit that they have the most significant contacts with the Northern District of Ohio. (ECF No. 17 at 4–5). In support, they submit a declaration of a corporate officer, who submitted that during the period of time Plaintiff was allegedly trafficked, there were more G6-branded properties in counties in the Northern District of Ohio, and comparatively more cities in that district were served by G6-branded properties. (Johnson Decl., ECF No. 17-1 ¶¶1, 4–5).

Plaintiff counters that this is a convoluted and "tortured analysis" of the venue statute. (ECF No. 23 at 4). She argues that, under the plain text of the statute, the inquiry stops after the first step. (*Id.* at 9). She also proffers that the Defendants' registered agent is in this district, arguing this outweighs the number of branded properties in the Northern District of Ohio. (*Id.* at 10).

In reply, Defendants argue that § 1391(d) of the venue statute must apply in full, consistent with the language of § 2255(c)(1) that anticipates venue having to "meet[] applicable requirements" of that statute. (ECF No. 24 at 1–2). They also contend that Plaintiff has failed to meet her evidentiary burden to show venue is proper.

**B. Analysis**

This dispute turns on statutory construction, and so the Court "begin[s] with the language of the statute," and "'determine[s] whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' The inquiry ceases 'if the statutory language is unambiguous and the statutory scheme is coherent and consistent.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

Here, the statutory text is unambiguous, the statutory scheme is coherent and consistent, and Defendants' argument fails as matter of law. The first step under § 1391(d) is that an organization "shall be determined to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). This first step is satisfied in this case because when the Court is exercising jurisdiction pursuant to its national service of process provision, it exercises jurisdiction for the United States. Thus, the contacts analysis queries whether the organization "has sufficient minimum contacts with the United States," *DeSoto*, 245 F. 3d at 567, and the Court's power to bind them in this case would not "offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also generally J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (explaining that the United States is a "distinct sovereign").

That first step resolves any question, and no second step is necessary. Under nationwide service of process statutes like CAVRA, organizations in multi-district states reside in *each* district. And because each state has at least one district where each organization resides, § 1391(d)'s contingent significant-contacts step does not apply. While the authority interpreting § 1391(d) under such circumstances is scant, what little caselaw exists supports this interpretation. For instance, when the Seventh Circuit was tasked with analyzing a nationwide service of process provision in the Clayton Act, 15 U.S.C. § 22, it considered how to effectuate a venue provision contained within the Act that differed from the general venue statute. *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724–25 (7th Cir. 2013). The Seventh Circuit ultimately elected to read the Clayton Act's nationwide service of process provision "as a package deal" with its venue provision, noting that "the de-linked view . . . [would] run into the fact that [§ 1391](d)

injects a minimum-contacts test that would otherwise be absent into the venue analysis, but only in cases brought in states with multiple judicial districts." *Id.* at 730. This approach "eliminate[d] the possibility of selectively *re* introducing the minimum-contacts analysis based on the happenstance of whether the state has multiple judicial districts." *Id.* The Court agrees with the rationale of avoiding the reintroduction of a minimum-contacts analysis for states with multiple judicial districts. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) (Courts have a "duty to Congress's statutes as a harmonious whole rather than at war with one another.").[1] That approach would seem arbitrary, redundant, and contrary to a nationwide service of process statute. Moreover, it would require a contorted read of the statutory text.

While Defendants do point to quirks in the interplay between CAVRA and § 1391(d), that is no reason to discount the plain language of either statute, *see Barnhart*, 534 U.S. at 450, or Congress's remedial purpose in enacting CAVRA. *See Peyton v. Rowe*, 391 U.S. 54, 65 (1968) ("[R]emedial statutes should be liberally construed."); *accord In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *8 (recognizing the "broad remedial purpose of § 2255") (citation omitted). Contrary to Defendants' contention, the Court's reading would not render swathes of § 1391(d) superfluous, void, or insignificant, (ECF No. 24 at 3), because those provisions certainly could and would apply in other cases where there is no nationwide service of process.[2] Instead, the Court declines Defendants' invitation to interfere with the plain terms that "constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020).

---

[1] It is true that *KM Enterprises* dealt with a separate statutory venue provision, whereas CAVRA incorporates § 1391. 18 U.S.C. § 2255(c)(1). But the same reasoning applies in each context.

[2] Nor have Defendants shown that this read would render the entirety of § 1391 as a nullity in CAVRA cases. This decision does not conflict with the Court's prior dicta that "a nationwide service of process statute does not result necessarily in proper venue nationwide." *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *10. For example, venue may still need to change for convenience or the interests of justice. 28 U.S.C. § 1404(a).

"If judges could add to, remodel, update, or detract from [statutory provisions] inspired only by extratextual sources"—like Defendants' offered law review article from 1991[3]—or "our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives." *Id.* at 654–55.

## IV. CONCLUSION

For the foregoing reasons, the G6 Defendants' Motion to Dismiss (ECF No. 17) is **DENIED**.

Although the Court's local rules generally prohibit additional memoranda beyond the motion, opposition, and reply, *see* S.D. Ohio Civ. R. 7.2(a)(2), Plaintiff N.G.'s Motion for Leave (ECF No. 26) to supplement is unopposed, and it is **GRANTED** for that reason.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 23, 2026**

[3] To be sure, Professor Oakley's law review article on the then-recent changes in the law of jurisdiction and venue was cautious in its appraisal of the impact a nationwide service of process statute would have on venue in multistate districts, writing that "it would appear that the personal jurisdiction conferred by [such a] statute would not automatically make a corporate defendant resident for venue purposes in every district. At least one district will always qualify as the defendant's residence under the 'most significant contacts' test." J.B. Oakley, *Recent Statutory Changes in the Law of Federal Jurisdiction and Venue*, 24 U.C. Davis L. Rev. 735, 774 n.147 (1991). Professor Oakley did not provide any authority for this particular presumption, instead providing it as an observation from the Supreme Court's due process analysis in *Burger King v. Ruzewicz*, 471 U.S. 462 (1985). *Id.* Elsewhere, he conceded that "the phrase 'most significant contacts' is confusingly foreign to the analysis of personal jurisdiction." *Id.* at 773.